IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVAHN JEFFERSON,                    :
                                     :
        Plaintiff,                   :        CASE NO.: _____
                                     :
v.                                   :
                                     :
GENERAL MILLS OPERATIONS, LLC,       :
                                     :
        Defendant.                   :

## COMPLAINT

Plaintiff is seeking leave to amend the complaint to add a Title VII claim in separate class action litigation in which he is a named plaintiff and which is pending in this Court, Case No. 1:24-cv-02409-MLB-JKK. (*See* Docs. 20 & 20-1.) Plaintiff files this complaint to preserve his Title VII race discrimination claims and to assert FMLA claims herein.

## JURISDICTION AND VENUE

### 1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protections of civil rights, and pursuant to 28 U.S.C. § 1331,

which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

2.

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA").

3.

Pursuant to 28 U.S.C. § 1391(b), § 1391(c), and N.D. Ga. L.R. 3.1, the Atlanta Division of this Court is the proper venue for Plaintiff's claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim occurred within the Atlanta Division of this Court. *See also* N.D. Ga. L.R. 3.1(B)(1)(a) and 3.1(B)(3).

**PARTIES**

4.

Plaintiff is a Black male and a former employee of Defendant who worked at General Mills' manufacturing facility in Covington, Georgia, until he was terminated in March 2024.

2

5.

Plaintiff is a citizen of the United States and resident of the State of Georgia; he submits himself to the jurisdiction of this Court.

6.

General Mills Operations, LLC ("Defendant" or "General Mills"), is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and was properly served by personal service of process upon its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

## ADMINISTRATIVE PROCEEDINGS

7.

Defendant is a covered employer under Title VII.

8.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

9.

The EEOC issued Plaintiff a Notice of the Right to Sue against Defendant, and this lawsuit was timely filed thereafter.

10.

Plaintiff made a good faith effort to comply with EEOC regulations and applicable law and to provide all relevant, specific information available.

11.

All conditions precedent to jurisdiction under Title VII have been satisfied.

12.

All administrative prerequisites for filing suit on Plaintiff's claims have been satisfied.

13.

This suit is timely, appropriate, and valid in all respects.

## STATEMENT OF FACTS

### FACTS RELEVANT TO FMLA CLAIMS, COUNTS ONE & TWO

14.

In January 2022, Jefferson began work for General Mills' Covington location.

15.

Around June 2023, Jefferson took intermittent leave.

16.

Around August 2023, a co-worker informed Jefferson that he overheard supervisors discussing ways to terminate him because he was taking FMLA leave.

17.

Around March 2024, Jefferson was accused of falsifying a document and slowing down production two weeks earlier.

18.

Jefferson was told conflicting things about the machine he supposedly lied about cleaning.

19.

Jefferson had not been trained how to clean the machine referenced in paragraph 18.

20.

Jefferson was terminated on March 4, 2024.

21.

When he was terminated, General Mills was aware Jefferson was expecting a child and intended to take FMLA leave.

FACTS RELEVANT TO TITLE VII CLAIMS, COUNTS THREE-FIVE

22.

On or about January 10, 2022, Jefferson began working for Defendant.

23.

Jefferson first started trying to get a job with General Mills in 2016. Jefferson went through a series of three interviews with all white men and was not hired. He applied another time after the first interview and was not given an interview. When Jefferson interviewed the second time, the interviewer was a Black man. The interview was less intense and less hostile, and Jefferson was given the job.

24.

A white male employee, J.J. (last name unknown), was hired one month before Jefferson. Nonetheless, Jefferson was pressured to take his Level 2 test at a particular seniority benchmark (i.e. 6 months), and J.J. was not required to take it at that time.

25.

Around July 2022, Jefferson was written up for a mistake that was made by his white trainer, Ashley Larrimore, a white female. At first, Jefferson's intermittent supervisor, Andrew Atkins, was planning to only write Jefferson up for the mistake, but Jefferson pointed out that he was in training and the white

trainer was responsible for it.  As a result, Jefferson and Larrimore were both written up and put on a corrective action level.  This write-up caused Jefferson to not get a raise for a year.  The write-up did not cause Larrimore to miss a raise.

26.

Jefferson was also not given the same amount of training given to white employees.  If an employee failed the test, they have to wait before they can take it again, and, if they fail it enough, you can get fired.  Jefferson was pressured to take his test quickly, but white employees were given as much time as they wanted.

27.

Around June 2023, Jefferson took intermittent FMLA leave allowing him to miss three workdays per week.

28.

In August 2023, shortly after Jefferson's brother passed, G. Davis told Jefferson about a conversation he overheard Korpi, Huffman, Ramos, and Stephen (last name unknown) were discussing ways to get Jefferson fired.  At the time, Jefferson's supervisors were Danny Thompson and Phil Fain.

29.

Stephanie Ramos physically touched Jefferson on several occasions and made him uncomfortable. Jefferson began to avoid her because of the touching. Ramos told his supervisor, Thompson, that Jefferson was not engaged and did not want to be at work.

30.

In August 2023, Jefferson reported the situation with Ramos and all individuals involved in the conversation that G. Davis overheard to Mandy Calloway, then to corporate HR. Jefferson reported that he believed he was being targeted for taking intermittent FMLA leave because of his race. White employees who took leave were not targeted and did not suffer adverse employment actions as a result.

31.

After Jefferson reported the conversation to HR, the individuals involved in the conversation overheard by G. Davis distanced themselves from Jefferson, which he initially welcomed.

32.

In November 2023, Jefferson's uncle passed. The company gave bereavement leave and FMLA leave. Jefferson's direct teammates did not have an

issue with Jefferson taking leave.  However, Huffman and Korpi frequently made comments about Jefferson being out of work, being lazy, or trying to take advantage of the system.

33.

Shortly after the report to HR in August 2023, Huffman and Korpi frequently threatened Jefferson with write-ups related to his uniform or PPE.  If Huffman or Korpi saw Jefferson, they would nitpick his uniform and PPE, threaten to write him up, or report him to his actual supervisor, Danny Thompson. Huffman was a Technician; Korpi was a TTL in a different department.  Huffman and Korpi would nitpick Jefferson and report him to his supervisor to attempt to get him in trouble.  Meanwhile, white employees were not written up for the same or more serious uniform or PPE violations.

34.

Thompson told Jefferson that Huffman and Korpi "had a hard-on" for him, and wanted to get him in trouble.  Huffman and Korpi did not put such effort into getting white employees in trouble.

35.

Around January 2024, however, Thompson passed away and Fain retired.

36.

After Thompson passed and Fain retired, Joe Huffman and Nicholas (last name unknown), both of whom were involved in the August conversation, became his supervisors.

37.

Joe Huffman made comments or asked questions about Jefferson's –

(a)     Smell.

(b)     Clothing.

(c)     Jewelry.

(d)     Vehicle.

38.

In Jefferson's presence, Huffman and Korpi made comments about Naaman Smith's dreadlocks being nappy or gross.  They also made comments about Smith's clothes and hygiene.  Huffman and Korpi did not make comments about white employee's hair, clothes, or hygiene.

39.

Huffman and other white employees asked various stereotypical questions, such as how Jefferson was financially able to obtain his vehicle and why he wore jewelry and certain clothing.

40.

Jefferson personally witnessed Korpi blame G. Davis and Smith for issues that John Dean was responsible for, and he personally witnessed Korpi give credit to Dean for G. Davis and Smith's successes. Some examples of this included changeovers, startups, and troubleshooting. Jefferson also personally witnessed numerous occasions where G. Davis, Smith, and another Black employee were sweating and working hard, and Dean was not working, looking at his phone, and/or watching TV. Dean frequently left for break when something challenging arose; Black employees were not allowed to do that.

41.

Several months after his supervisors changed, Jefferson was told that he had falsified a document and slowed down production two weeks before the issue was brought to his attention.

42.

Jefferson's supervisor told him the machine was "80% clean" and it delayed production. Later, Jefferson was told by HR representative Mandy Calloway that he only cleaned 20% of the machine. Jefferson disputed that he did not fully clean the machine or that he falsified a document. Calloway stated that Georgia is an

at-will state, and he could be fired for any reason.  His termination was based on his race.

43.

By the time he was terminated on or about March 4, 2024, Jefferson had been nitpicked for months for:

(a)    Breaks – John Dean would not be called back from break for any reason, but Jefferson was required to cut his breaks short if a white manager wanted him to do the work.

(b)    Cell phones – it was acceptable for white employees to be on their cell phones, but not Jefferson.  John Dean was able to openly be on his cell phone; Korpi would write-up or counsel Jefferson, or report him to his supervisor, Thompson, if he saw him on his phone.

(c)    PPE – John Dean would only have earplugs and a helmet on talking to Korpi without an issue, but Korpi would nitpick Jefferson if he did not have earmuffs or eyeglasses on and fitted perfectly.  Korpi also would not counsel or reprimand other white employees for PPE perfection, including one of Korpi's family member (believed to be son-in-law or stepson).

(d)    Jewelry – Jefferson was not permitted to wear jewelry, but a white

employee, Rick (last name unknown), was allowed to put bandaids

over his earrings.

44.

Jefferson was not trained to clean the machine that he was terminated for

not cleaning.  The white comparator, Ashley Larrimore, who engaged in the same

conduct, had been trained on the machine, was a trainer, and was not terminated.

45.

Jefferson was passed over for promotion in favor of less-qualified white

employees at least twice since he began his employment with General Mills.  White

employees with little to no qualifications are routinely given positions over Black

employees.

## COUNT ONE

## Family and Medical Leave Act:  Retaliation

46.

Plaintiff repeats and realleges each and every allegation in paragraphs 14-

21 above as if set forth herein in full.

47.

By taking intermittent FMLA leave in 2023, Jefferson engaged in statutorily protected activity.

48.

Defendant's termination of Jefferson was motivated by and causally related to impermissible retaliatory or discriminatory animus.

49.

As a result of Defendant's retaliatory conduct against Jefferson for exercising FMLA rights, he is entitled to wages, salary, employment benefits, and other compensation denied or lost, including front and back pay, non-wage monetary losses, liquidated damages, interest, attorney fees, and other costs of this action.

## COUNT TWO

### Family and Medical Leave Act:  Interference

50.

Plaintiff repeats and realleges each and every allegation in paragraphs 14-21 above as if set forth herein in full

51.

Defendant's termination of Jefferson interfered with his ability to exercise his FMLA rights.

52.

Jefferson was entitled to the FMLA benefits that his termination denied him of.

53.

As a result of Defendant's interference with Jefferson's FMLA rights, he is entitled to wages, salary, employment benefits, and other compensation denied or lost, including front and back pay, non-wage monetary losses, liquidated damages, interest, attorney fees, and other costs of this action.

## COUNT THREE

### Title VII:  Disparate Treatment/Discrimination

54.

Plaintiff repeats and realleges each and every allegation in paragraphs 1-13 and 22-45 above as if set forth herein in full.

55.

Plaintiff is a member of a class protected by Title VII.

56.

Defendant is a covered employer under Title VII.

57.

Plaintiff was qualified for the job that he was performing at the time he was terminated.

58.

Plaintiff suffered an adverse employment action despite being qualified for his position.

59.

Plaintiff was treated less favorably than similarly situated employees outside of his protected class, including John Dean and Ashley Larrimore.

60.

Plaintiff's race was a motivating factor for the adverse employment actions taken against him.

61.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

62.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT FOUR

Title VII:  Retaliation

63.

Plaintiff repeats and realleges each and every allegation in paragraphs 1-13 and 22-45 above as if set forth herein in full.

64.

Plaintiff is a member of a class protected by Title VII.

65.

Defendant is a covered employer under Title VII.

66.

Plaintiff engaged in a protected activity when he reported the conversation about white employees discussing ways to terminate Devahn Jefferson to HR and complained about discrimination, harassment, and being targeted.

67.

In retaliation for Plaintiff's complaint, Defendant took materially adverse actions against him, including disciplining him, terminating him, creating a hostile work environment that would have dissuaded a reasonable worker from making complaints of discrimination and harassment, failing to promote him, and taking disparate adverse actions against him.

68.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against them.

69.

Plaintiff asserts a retaliation claim pursuant to Title VII.

70.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT FIVE

### Title VII: Hostile Work Environment

71.

Plaintiff repeats and realleges each and every allegation in paragraphs 1-13 and 22-45 above as if set forth herein in full.

72.

Plaintiff was discriminated against and harassed based on his race by General Mills' supervisors and coworkers, including Daniel Korpi.

73.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as

subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

74.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

75.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

76.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

**PRAYER FOR RELIEF**

WHEREFORE, Jefferson demands a TRIAL BY JURY and the following relief:

I.    Related to FMLA claims:

(a)    Declaratory judgment that Defendant's actions violated Jefferson's FMLA rights;

(b) Full back pay from the date of the adverse employment action taking into account all raises to which Jefferson would have been entitled but for Defendant's unlawful activity, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(c) Reinstatement or front pay to compensate Jefferson for lost future wages, benefits, and pension;

(d) Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Jefferson's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(e) Liquidated or double damages for Defendant's willful violation of the FMLA;

(f) Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct toward Jefferson and deter Defendant from similar conduct in the future;

(g) Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(h) Judgment against Defendant for damages incurred by Jefferson;

(i)     Judgment against Defendant in an amount to fully and adequately compensate Jefferson;

(j)     An award of pre-judgment and post-judgment interest;

(k)     A trial by jury on all issues triable to a jury; and

(l)     Other and further legal and equitable relief as the Court deems just.

II.     <u>Related to race claims:</u>

(m)     Declaratory judgment that the systemic pattern and practice of racially hostile and discriminatory employment practices that, over 30 years, made advancement at the Covington facility futile and caused catastrophic harm to Plaintiff's career in violation of his Title VII rights;

(n)     Temporary and permanent injunctive relief, along with this Court's oversight for a reasonable duration, disbanding the Good Ole Boys, holding racist decisionmakers accountable, and implementing lawful employment practices that give Black employees the full benefit of employment at General Mills;

(o)     Reinstatement of Plaintiff;

(p)     Full amount of financial losses caused to Plaintiff as a result of the racist employment practices at the Covington facility;

(q)     Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(r)     Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(s)     Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(t)     Judgment against Defendant for damages incurred by Plaintiff;

(u)     Judgment against Defendant in an amount to fully and adequately compensate Plaintiff;

(v)     An award of pre-judgment and post-judgment interest;

(w)     A trial by jury on all issues triable to a jury; and

(x)     Other and further relief as the Court deems just and proper.

Respectfully submitted this 29th day of December 2024.

By:    /s/ Douglas H. Dean
Georgia Bar No. 130988
Attorney for Plaintiff
Dean Thaxton, LLC
601 E. 14th Avenue (31015)
Post Office Box 5005
Cordele, Georgia 31010
T:  (229) 271-9323
F:  (229) 271-9324
E:  *doug@deanthaxton.law*

By:    /s/ Linda G. Carpenter
Georgia Bar No. 111285
Attorney for Plaintiff
The Brosnahan Law Firm
31 Lenox Pointe, NE
Atlanta, GA 30324
T:  (404) 853-8964
F:  (678) 904-6391
E:  *lgc@brosnahan-law.com*